### 18824. BROWN *v.* THE STATE.

DECIDED MAY 15, 1928.

*Lowrey Stone,* for plaintiff in error.
*B. T. Castellow, solicitor-general, Bond Almand,* contra.

LUKE, J. Charles Brown was charged with entering the ice plant of the City of Blakely, and taking therefrom, with intent to steal the same, four books of ice-tickets, each book being of the value of

$4.50 and containing ten tickets, and each ticket representing one hundred pounds of ice. A conviction resulted, and the defendant made a motion for a new trial upon the general grounds and upon three special grounds.

A. R. Killebrew, sworn for the State, testified: that he had been superintendent of the said ice plant since January 1, 1927; that the plant was owned by the City of Blakely; that his duties were merely supervisory until March, 1927; that Mr. Kelly, whose office was next to that of the witness, attended to the "sales part" of the plant; that about November 10, 1927, Kelly left, and Mr. Johnson took his place; that each ice-book had a number on it, and that the ten tickets in each book bore the same number as the book; that the ice-books and tickets were the property of the City of Blakely; that "Mr. Kelly kept the ice-books in a box in a small wooden cabinet against the wall in the office, in plain view of any one coming into his office;" that these ice-books were bought before the witness came to Blakely, and that there were two hundred of them in the series; that in checking up the ice-books about November 10, 1927, they found that there were no books numbered 450, 451, 452, and 453, though there were books numbered regularly through 449, and books in regular sequence beginning with 454; that at this time two men,—the defendant and Clifford Anthony,—were delivering ice; that when a ticket numbered 451 was turned in by one of the men, they were directed to write on the back of each ticket the customer's name from whom it was procured; that five tickets numbered 451 were turned in with different names written on each ticket, and that the defendant admitted writing the names on the tickets, and that he probably turned them in, but could not explain how these tickets bearing the same number could have been gotten from different people; that ice-book 451 had not been sold, as "the books had not been sold that high up;" that book 453 was found under the ice-platform with all the tickets gone out of it; that he did not check up the ice-books either in January or March, 1927; that he could not swear that he ever saw any of the missing ice-books in the cabinet where they were kept; that he could not swear of his own knowledge that the tickets in each missing book were numbered the same as the book from which they came; that until recently the cabinet in which the ice-books were kept was open, and that the office containing the cabinet was often left with

no one in it; that Mr. Kelly often left in his office the negroes who delivered ice; that it was possible for the missing books to have gotten mixed up when Mr. Kelly went to get them; that there had been trouble about the ice-tickets both before and after the defendant started to delivering ice about September 10, 1927; that the other man, Anderson, claimed to have sold an ice-book to a man who "denied that he had written in it where his name appeared;" that he considered the defendant all right and very industrious; that the defendant consistently denied stealing the tickets, saying that he got them in the usual way; that all the tickets examined corresponded with the number on the back of the book from which they came; that whenever an ice-book was sold the customer's name was written on the back of the book, but that no name was written on the book found under the platform; and that the books corresponding with the numbers on the tickets turned in were not found.

W. M. Johnson, sworn for the State, testified that the defendant turned in at the same time five tickets numbered 453; that the number was too large, and he knew that the book bearing that number had not been sold; that ice-books 450 to 453, inclusive, were missing; that he asked the defendant how it was he had five tickets out of one book coming in at the same time, and the defendant said he might have gotten them from the market, but that the witness knew he had not gotten the tickets from the market, because the book bearing the same number as the tickets had not been sold, and that no customer's name was written on any of these five tickets. The defendant, in his statement at the trial, said: "I don't know nothing about it. I tried to give them good service, and every book they give me I collected for it and carried it back to the office."

It does not appear when the missing ice-books were purchased, the only testimony in this regard being that of Mr. Killebrew, who said that they were bought before he came to Blakely as superintendent on January 1, 1927. The same witness testified that he could not swear that he ever saw any of the missing books in the cabinet where the ice-books were kept. Mr. Johnson's testimony that "he looked through the cabinet, and five books were missing from the series," throws little or no light on the question whether the missing ice-books were ever in the cabinet.

Again, assuming that the ice-books were in the office as alleged,

the evidence entirely fails to show when they were taken therefrom. Certainly the fact that a "check up" of the ice-books in November, 1927, disclosed that the books were missing does not show when they disappeared. Indeed, it does not appear that the alleged offense was committed within two years prior to the indictment. However, since this contention was not specifically raised by a ground of the motion for a new trial, the judgment overruling the motion can not be reversed for lack of evidence showing that the offense charged was committed within the statute of limitations. Ga. L. 1911, p. 149 (Park's Penal Code (1914), § 1101 (a)). See also *Wall* v. *State,* 10 *Ga. App.* 136 (72 S. E. 934); *Parrish* v. *State,* 10 *Ga. App.* 836 (74 S. E. 445); *Gentry* v. *State,* 15 *Ga. App.* 641 (83 S. E. 1099); *Ford* v. *State,* 21 *Ga. App.* 499 (94 S. E. 69); *Dennis* v. *State,* 19 *Ga. App.* 446 (91 S. E. 783); *Palmer* v. *State,* 19 *Ga. App.* 752 (92 S. E. 233); *Shirley* v. *State,* 32 *Ga. App.* 780 (124 S. E. 812). It clearly appears from the foregoing authorities that the question whether there was a failure to prove the time of the commission of an offense must be raised before the trial court, and that the question can not be invoked by the general assignment in a motion for a new trial that the verdict is contrary to the evidence.

However, where a conviction, as in this case, rests entirely upon the unsatisfactorily explained possession of stolen goods, the "recency" of the possession has much to do with the weight of the evidence, and we do not think a conviction should be allowed to stand where the evidence fails to show when the alleged offense was committed. The nearer the possession to the time of the larceny, the stronger is the inference of guilt. *McAfee* v. *State,* 68 *Ga.* 823. It was held in *Calloway* v. *State,* 111 *Ga.* 832 (36 S. E. 104), that "While recent possession of stolen goods unexplained will justify a conviction for larceny, the mere possession of goods several months subsequent to the time they were alleged to have been stolen and a failure to satisfactorily account for such possession will not alone authorize a conviction." In the case of *Turner* v. *State,* 114 *Ga.* 45 (39 S. E. 948), where the goods alleged to have been stolen were found in the possession of the defendant "some fifteen months" after the larceny, the following ruling was made: "While proof that an accused was found recently after a larceny in the possession of stolen goods is a circumstance from which the presumption

of guilt arises, sufficiently strong to authorize a conviction, yet where the evidence shows such possession not to have been recent, and the articles stolen to be of such a nature that they could readily have passed from hand to hand, a presumption of guilt still arises, but it is not, without other evidence, sufficient to sustain a conviction." In the same case (p. 48) the court stated "that in all cases where such possession is relied on to establish guilt, it must either be shown to have been recent, or else it must be strengthened by other evidence."

In this connection it might not be amiss to remark that this is not an ordinary case of possessing property alleged to have been stolen, since if another than the defendant or his colaborer either bought or stole ice-tickets, they would ordinarily be used for procuring ice, and would naturally come into the hands of one of the delivery men as the representative of the ice company. We do not think that the presumption of theft would be as strong, in any event, in a case like this as it would be in the cases usually presented to the courts.

The evidence in this case does not support the verdict, and the court erred in overruling the motion for a new trial.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*